## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AMELIA LUNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 13-1289-JWL |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error as a matter of law in the step four analysis, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.      Background

Plaintiff applied for SSD and SSI, alleging disability beginning June 14, 2010, the date she was terminated from her employment of fourteen years. (R. 14, 123-31).

Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She alleges that the Administrative Law Judge (ALJ) erred in according "little weight" to Dr. Metzger's opinion that Plaintiff misses three days of work each month due to her migraines; failed to include limitations in his residual functional capacity (RFC) assessment corresponding to the mild limitations he found that Plaintiff has in maintaining social functioning and in maintaining concentration, persistence, or pace; failed to provide sufficient bases to discount Plaintiff's allegations that her migraines cause her to miss three or more days of work each month on average; and failed to make an on-the-record finding at step four regarding the mental and physical demands of Plaintiff's past relevant work.  Plaintiff also argues that substantial record evidence supports a finding that Plaintiff is unable to sustain work eight hours a day, five days a week,  on a day-in, day-out basis, because of absences in excess of those permitted in the competitive world of work.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>see also</u>, <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Williams</u>, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step

four and step five of the sequential evaluation process.  Id.

      The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

      The court finds that remand is necessary as a matter of law because the ALJ

erroneously failed to make an on-the-record finding regarding the physical and mental

demands of past relevant work at step four of the sequential evaluation process.

Moreover, and perhaps more importantly, because the court has serious concerns

regarding the ALJ's explanation how it is that he found that Plaintiff is able to sustain

work eight hours a day, five days a week,  on a day-in, day-out basis, in the competitive

world of work, the court directs the Commissioner on remand to re-evaluate the RFC

assessment, properly explaining her determination that Plaintiff is able to sustain work

4

eight hours a day, five days a week,  on a day-in, day-out basis, in the competitive world of work, and paying particular attention to the record evidence suggesting that Plaintiff will miss three or more days of work per month due to her migraine headaches--the fact that she was terminated from her job of fourteen years due to absences; the calendars from 2004 through June 14, 2010 provided by Plaintiff showing days missed from work due to migraine headaches; Plaintiff's testimony; third-party statements from her co-workers; the Work Activities Questionnaire completed by Plaintiff's manager at the job from which she was terminated, which shows that for most abilities and activities Plaintiff could generally perform without problems, and suggesting that the problem areas were related to her health or to her absenteeism; the opinion of Plaintiff's long-time treating physician that she would miss at least three days of work each month due to migraines; the treatment note from her treating physician that indicated that "most of her pain is gone," since she started Cymbalta a month previously, and that she "only missed 3 days of work over the last month due to migraines" (R. 271); and the treatment notes from her surgeon suggesting that relief from her headaches after the decompression surgery were mixed and that even with a 50% reduction she was experiencing six migraine headaches a month.

## II.      The Step Four Consideration

Plaintiff claims that the ALJ improperly found at step four of the sequential evaluation process that she is able to return to her past relevant work as a receptionist and teacher's aide because he failed to "make specific findings regarding the physical and

5

mental demands of Plaintiff's past relevant work." (Pl. Br. 26) (citing Social Security

Ruling (SSR) 82-62; Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); Henrie v.

Dep't of HHS, 13 F.3d 359, 361 (10th Cir. 1993)).  The Commissioner admits that the

ALJ "did not discuss the requirements of Plaintiff's past work at length in the decision,"

but argues that Plaintiff has not shown prejudice from that error because she "does not

claim that she is unable to perform the physical, mental, or environmental requirements of

her past work; she merely argues that her absences due to migraines would prevent her

from performing any work." (Comm'r Br. 14-15).

As Plaintiff suggests, at step four of the sequential evaluation process, the ALJ is

required to make specific findings in three phases.  Winfrey, 92 F.3d at 1023 (citing SSR

82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)).  In phase one,

"the ALJ should first assess the nature and extent of [the claimant's] physical

limitations."  Winfrey, 92 F.3d at 1023.  In phase two, the ALJ must "make findings

regarding the physical and mental demands of the claimant's past relevant work."

Winfrey, 92 F.3d at 1024.  Finally, in phase three, the ALJ must determine "whether the

claimant has the ability to meet the job demands found in phase two despite the mental

and/or physical limitations found in phase one." Id., 92 F.3d at 1023.  These findings are

to be made on the record by the ALJ.  Id. at 1025; see also, SSR 82-62, 1975-1982 West's

Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of

fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may properly rely upon vocational expert (VE) testimony in making his findings at phase two and phase three of the step four determination.  Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003).  The ALJ may not delegate the step-four analysis to the VE, but he may properly rely on information supplied by the VE regarding the demands of plaintiff's past relevant work, and whether a person with plaintiff's RFC could meet those demands, and he may accept the VE's opinions.  Doyal, 331 F.3d at 761.  The critical distinction is whether the ALJ relied upon the VE testimony in making the findings or whether the ALJ delegated the phase two and phase three findings to the VE.  Id. 331 F.3d at 761.  Where the ALJ makes the phase two and phase three findings and quotes the VE testimony approvingly in support of those findings, he has properly relied upon the VE testimony.  Id.

The ALJ's entire phase two and phase three analysis consisted of three sentences in the decision:

> In comparing the claimant's residual functional capacity with the physical and mental demands of [past relevant] work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  The vocational expert testified that, given the residual functional capacity found in this case, that the claimant could return to this past relevant work.  The undersigned finds this testimony credible and has determined the claimant could return to this past relevant work.

(R. 24).

As Plaintiff argues, there is simply no on-the-record finding regarding the demands of Plaintiff's past relevant work.  In so far as is revealed by the decision, the ALJ merely

delegated the phase two and phase three findings to the vocational expert, and that is the specific error requiring remand in <u>Winfrey</u>.  92 F.3d at 1025.

The Commissioner's argument that Plaintiff has shown no prejudice from the step four error misses the point, both of SSR 82-62, and of Plaintiff's Brief.  SSR 82-62 represents the Commissioner's considered determination that on-the-record findings are necessary before she may determine that a claimant is able to perform her past relevant work.  Social Security Rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  Failure to make such findings is legal error requiring remand.  The point of Plaintiff's argument is that she cannot perform any work--that she cannot sustain work because her migraines cause her to miss at least three day's work each month, which is more than an employer will allow.  Moreover, the record suggests that she was unable to perform past work, both as a medical receptionist and as a teacher's aide because of absenteeism due to migraine headaches.  (R. 193-200, 257).  That is the prejudice Plaintiff claims inheres in the decision that she is able to perform the demands of past relevant work.  Remand is necessary to correct the step four error.

## III.    Ability to Sustain Work

Plaintiff's arguments that the ALJ erred in weighing Dr. Metzger's opinion that Plaintiff misses three days of work each month due to her migraines and failed to provide sufficient bases to discount Plaintiff's allegations that her migraines cause her to miss three or more days of work each month on average is essentially the same argument she

makes when asserting that substantial record evidence supports a finding that Plaintiff is unable to sustain work eight hours a day, five days a week,  on a day-in, day-out basis, because of absences in excess of those permitted in the competitive world of work.  The court will address these issues together as a whole, lest, in addressing them separately the court should fail to recognize that in the circumstances of this case each issue and the arguments provided therein tend to buttress one another.

The ALJ found that Plaintiff's allegations of symptoms resulting from her migraine headaches are not credible but are exaggerated and inconsistent with the other evidence, based upon the ALJ's evaluation of Plaintiff's daily activities, the minimal objective findings, Plaintiff's positive response to medication, the lack of records of continuing medical treatment after her alleged onset date, Plaintiff's financial interest in the outcome of the proceedings, and evidentiary inconsistencies.  The ALJ accorded "little weight" to Dr. Metzger's opinion that Plaintiff would miss at least three days of work each month because there are no treatment records after May 2010, because Dr. Metzger continued to prescribe the same medications after May 2010, and has not recommended further evaluation or more aggressive treatment.  The ALJ accorded "little weight" to the third-party opinions of Plaintiff's manager at the Wichita Clinic, of her sister, of two co-workers at the Wichita Clinic, and of the teacher she worked with as a teacher's aide, because those opinions are not supported by the objective medical evidence and because he found that "there is no evidence to show that these absences were necessitated by migraines other than [Plaintiff's] self report."  (R. 23).

Although the court is mindful that it may not reweigh the evidence or substitute its judgment for that of the Commissioner, it maintains serious doubts whether the record evidence will support the findings of the ALJ.  It appears that the ALJ has piled inference upon inference--potentially beyond the breaking point.  The evidence relied upon by the ALJ in discounting Plaintiff's credibility is not so unilateral as the ALJ presumes.  The ALJ found that Plaintiff "had decompression surgery in 2008 with noted improvement," and that one year later the surgeon who performed that surgery, Dr. Poggi, noted that she had "a 50% reduction in headache frequency, intensity, and duration," and that if problems later increased there was an option for further surgery.  (R. 20).  Missing from the ALJ's analysis of Dr. Poggi's treatment notes is Dr. Poggi's recognition that Plaintiff still reported 6 days home from work (after the 50% reduction in headaches) in January 2009.  (R. 291).  And, the record contains a 2009 calendar on which Plaintiff recorded 6 days off work due to migraines in January 2009.   (R. 162).  Moreover, the potential for further surgery ignores that the surgery costs more than $4,000.

The ALJ referenced Dr. Metzger's treatment note from May 26, 2010 in which Plaintiff stated that her pain was almost gone after she started taking Cymbalta the month earlier.  (R. 20) (citing Ex. 2F/1).  Although the ALJ acknowledged that Dr. Metzger also recorded Plaintiff had "only missed 3 days of work over the last month due to migraines" (R. 271), he failed to acknowledge that even this result--when "most of her pain is gone"--resulted in more missed work than the vocational expert testified is allowable.  (R. 52) (generally employers allow only one to two days absence in a month).  Moreover,

Plaintiff's May 2010 calendar confirms that three days of work were missed due to migraines before May 26, 2010.  (R. 160).

Both in discounting the credibility of Plaintiff's allegations of symptoms, and in determining that Dr. Metzger's opinion is worthy of only "little weight," the ALJ relied upon the fact that there were no treatment records for Plaintiff after she was terminated from her job at Wichita Clinic.  (R. 20, 22).  However, Plaintiff specifically testified that she began seeing Dr. Metzger in 2005 (R. 44) and that Dr. Metzger is "somebody [she] continue[s] to see."  (R. 43).  Moreover, in her opening statement, Plaintiff's representative stated that "the claimant hasn't been seeing the doctor but is getting phone prescriptions for her medications" (R. 35), that Plaintiff no longer has health insurance, id., and that although she works part time, she continues to miss work due to migraines and she makes less than $600 per month.  Id. 35-36.  It is not clear that the ALJ may discount either Dr. Metzger's opinion or Plaintiff's credibility on this basis.

While it is not certain that there is little more that can be done to mitigate Plaintiff's migraine headaches, Dr. Metzger is aware of all that has been done, and she is aware that Plaintiff can no longer afford frequent office visits or expensive treatment. The fact that she has not insisted that Plaintiff come in for office visits, has not recommended further or more aggressive treatment, and has continued to provide prescriptions for Plaintiff's medications suggests that she believes that all that can be done has been done within the financial constraints on Plaintiff, and further, that more expensive treatments will be of limited, if any, benefit.  Additionally, Plaintiff has

11

pursued extensive treatment for her migraines over the years, and that additional or more aggressive treatment may not reasonably be available or may be of little, if any, benefit. Plaintiff may be resigned to accept that she has achieved a level of treatment which has limited the effects of, or controlled her migraines to the maximum extent reasonably possible and that even with this level of relief she is unable to work at substantial gainful activity.  If the ALJ is to find fault with these opinions, it will be necessary to rely upon further medical authority or more than the mere inferences which might be drawn from a failure to pursue additional, more aggressive, or more expensive treatment.  The ALJ's reliance upon the fact that Plaintiff was able to obtain part-time work (which provided less than $2,300 between August 2010 and March 2011), to suggest that she should be able to afford more treatment, is merely to ignore the realities of life--that Plaintiff made less than $300 per month in the period of issue, that Plaintiff also had to quit that job because of absences allegedly due to migraines, and that Plaintiff was living with, and being substantially supported by, her family.  In such circumstances, it is clear that Plaintiff is unable to afford health insurance.  Moreover, most people in such circumstances would feel that it is important to use such income as they do receive to provide as much of their own living expenses as possible and to thereby relieve their family of as much of the additional burden as possible.  The ALJ's further reliance upon Plaintiff's ability thereafter to secure another part-time job at a rate of $11.50 an hour, and his assumption that she would be able to work twenty hours a week in that job ignored the same realities of life as discussed above, and it ignored Plaintiff's testimony

12

and the other record evidence suggesting that she would not be able to work five days a

week at that job because of absences caused by her migraine headaches.

The ALJ acknowledged that Plaintiff "submitted a personal log purporting to show

days of work missed because of migraines." (R. 21). But, he argued that "[a]lthough the

calendar goes as far back as 2004, there are no headaches noted after her alleged onset

date." Id. As the ALJ recognized, Plaintiff's calendar was completed to show days of

work missed because of migraines. (R. 154) ("Enclosed are my FMLA records of <u>days I</u>

<u>missed work</u> because of migraines.") (emphasis added). The calendar notes that Plaintiff

was "terminated 6/14" (R. 160), and Plaintiff's alleged date of onset of disability is also

June 14, 2010. (R.14). The calendar is a record of days of work missed, and Plaintiff

was terminated June 14, 2010. Therefore, it is unremarkable that the calendar does not

show any days marked after June 14, 2010. Plaintiff's alleged onset date is June 14,

2010, therefore it is also unremarkable that the calendar also does not note any headaches

after her alleged onset date. This fact says nothing regarding the credibility of Plaintiff's

allegations of disabling symptoms resulting from her migraine headaches.

The ALJ found that "the medical records in the evidence simply do not support the

frequency or severity of migraines alleged by the claimant." That the records do not

support the severity of migraines alleged is unremarkable because there is no objective

test which can reveal the severity of headache pain. However, the medical records

support the frequency of migraines alleged by Plaintiff. As noted above, Dr. Metzger's

note dated May 26, 2010 reveals that Plaintiff missed only three days of work due to

13

headaches in May which was "the best she has felt for some time." (R. 271). Supporting Dr. Metzger's report, Plaintiff's calendar indicates that she missed 7 days work in January, 5 days in February, 8 days in March, and 8 days in April, but only 3 days in May, 2010. (R. 160). The ALJ cited Dr. Poggi's records for the proposition that Plaintiff's headaches had been reduced in frequency by 50% (R. 20) (citing Ex 3F/4 (R. 294)), and Dr. Poggi's records also reveal that the 50% reduced frequency left Plaintiff with 6 headaches in January 2009 (R. 291, 294), which is confirmed by Plaintiff's calendar showing 6 days work missed in January 2009 due to migraines. (R. 162).

The ALJ also discounted Dr. Metzger's opinion, in part, because "there are no treatment notes of any kind to substantiate these claims." (R. 22). Although there are no treatment notes dated after Plaintiff's alleged onset date, that fact was explained to the ALJ, and he has not adequately rebutted it. Moreover, those treatment records which are in evidence reveal significant support for Plaintiff's allegations, and the ALJ points to no record evidence of any sort affirmatively suggesting that Plaintiff's condition has improved. In fact, the record evidence regarding Plaintiff's part-time work history tends to confirm that she is unable to work consistently on a day-in, day out basis.

Finally, the ALJ's determination to discount all of the third-party opinions because they are not supported by the objective medical evidence, and because there is no evidence other than Plaintiff's self-reports showing that her absences were necessitated by migraines is not supported by the record evidence. As discussed above, although there is no test to demonstrate the severity of headache pain, the record medical evidence

14

provides much more support for Plaintiff's allegations of migraines than the ALJ allows. Moreover, contrary to the ALJ's finding, there is record evidence other than Plaintiff's reports to show that her absences were necessitated by migraines.  Plaintiff's sister reported, based on her observation of Plaintiff "2-3 times a week," 3-4 hours weekly (R. 193), that Plaintiff "spends all of her time puking."  (R. 198).  A co-worker of Plaintiff, Ms. Rakestraw, who was also a registered nurse, noted that Plaintiff "would make an attempt to come to work, but the lights and the movement that was required would only exacerbate her migraine to the point that she would be vomiting and we would have to send her home."  (R. 255).  Another co-worker, Ms. Stanley, "also witnessed how much her migraines affected her.  On the days when she would come in to work with a migraine, she would have trouble with smells and the lighting making her nauseous."  (R. 256).

Although the evidence does not point but one direction, and it would be improper to remand for an immediate award of benefits, the court is convinced that the ALJ has not adequately considered and explained his finding that Plaintiff is able to sustain work eight hours a day, five days a week, on a day-in, day-out basis in the competitive world of work.  Remand is necessary for a proper consideration and explanation.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 4th day of November 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**